## MALLORY *et al. v.* ROYSTON BANK.

1. In a suit upon a promissory note it was sought to set up the defense that the makers were induced to sign it by fraud and duress, and that the plaintiffs received the note with notice of the facts relied upon to establish that defense. The allegations of the plea relied upon to set up fraud and duress, and those of the amendment which was offered relative to the same matter, were insufficient to charge fraud or duress; and there was no error in striking so much of the plea as related to that defense, nor in disallowing the amendment.

2. The record does not disclose the substance of all of the interrogatories which were propounded to the witness, and fails to disclose specifically the substance of any particular interrogatory which it was claimed was not fully answered. But in so far as the substance of any of the interrogatories is disclosed, they appear to have been fully answered.

3. One ground of the motion for new trial relative to the refusal of the court to require the plaintiff to make formal answer to a notice to produce was not approved in its entirety by the presiding judge; but in so far as it was approved, there was no abuse of discretion in refusing to require further answer to the notice to produce.

4. It appeared affirmatively from the evidence and certain admissions of the defendants that the note was negotiable, and that the plaintiff received it for value in due course of trade before its maturity. There was evidence that it was executed without consideration, but no evidence to show notice of that fact to the plaintiff. There was no error in directing a verdict.

FEBRUARY 16, 1911.

Complaint. Before Judge Charlton. Effingham superior court. August 10, 1909.

*W. L. Gignilliat* and *Travis & Travis,* for plaintiffs in error.
*Hardeman, Jones, Callaway & Johnston,* contra.

ATKINSON, J. The Royston Bank instituted suit against J. G. Mallory, P. G. Mallory, and J. W. Ingram on a promissory note, dated April 9th, 1907, and due January 1st, 1908, which note was made payable to the order of the makers and indorsed by them in blank. J. G. Mallory and P. G. Mallory each filed pleas and amendments to their pleas, to which general and special demurrers were filed. The defenses so set up were, that the note was without consideration, that the makers were induced to execute it by fraud and duress, and that the plaintiff received the note with notice of the matters pleaded in defense. The judge struck so much of the pleas as related to duress and fraud, but allowed the rest of them to stand. At a subsequent term of the court, when the case came on regularly for trial, other amendments were offered by each of the defendants above named, containing allegations relative to the defense of duress and fraud; but they were disallowed. At the term before the trial the defendants filed exceptions to the answers of a witness to interrogatories propounded by defendants, and moved for the suppression of the interrogatories, and that they be re-executed, which motion was also overruled. To all of these rulings exceptions pendente lite were duly filed, and error was assigned upon them. During the progress of the trial the defendants moved the court to require plaintiff to make formal answer to

a notice to produce; but the motion was overruled, and the court refused to grant an order requiring the production of the books called for. At the conclusion of the evidence the judge directed a verdict in favor of the plaintiff. The defendants made a motion for new trial, upon the general grounds, and upon special grounds which complained: (*a*) of the ruling upon the motion to require the plaintiff to make formal answer to the notice to produce; and (*b*) of the direction of a verdict in favor of the plaintiff, it being alleged that a verdict for the plaintiff was not demanded by the evidence, and that the evidence was sufficient to raise an issue of fact as to the consideration and as to notice to the plaintiff. The motion for new trial was overruled, and error was also assigned upon this judgment.

'1. Under the assignments of error, one question for determination is the sufficiency of the plea to avoid payment of the note on the ground of fraud and duress practiced upon the makers, inducing them to execute the note. It was alleged that the plaintiff received the note with notice; but if the facts relied upon to show fraud or duress are insufficient for that purpose, notice of such facts to the maker would have no bearing upon the case. The plea is to be construed most strongly against the pleader, and in a plea of duress it is essential that the facts relied upon to show duress be specifically set forth. *Carswell* v. *Hartridge,* 55 *Ga.* 412. In the case under consideration both defendants who filed pleas alleged the same statement of facts to show fraud and duress, as follows: J. G. Mallory was the father of Paul G. Mallory. The latter had been cashier of the Bank of Coolidge, but had resigned. Shortly after his resignation the two were called together by named officers and agents of the bank, who knowingly and falsely stated to them that the defendant Paul G. Mallory had violated certain criminal laws of the State of Georgia regarding banking, in that, being cashier of the bank, he, in connection with the defendant Ingram, who was a director of the bank, had used money of the bank with which to speculate, referring to a certain store building which had been erected by the two defendants named with funds largely borrowed from the bank, but which in fact had been borrowed with the full consent of the board of directors, which consent, with the approval of the loan, had been duly entered on the minutes of the bank. It was also stated to them that the bonding company which

had been surety upon the bond of P. G. Mallory as cashier was liable for all of his shortcomings, and it would only be necessary to turn the defendant P. G. Mallory over to the bonding company, which would doubtless prosecute him for all the alleged felonies he had committed, and even if by any technicality of the law he escaped a just conviction he could never get a place in a bank again, for his record woud be tarnished and his business career ruined by exposure of his many "defections." The defendants believed that the officers of the bank were telling the truth about "such laws," and that the borrowing of the bank's funds in the manner above indicated for speculation was a penal offense under the laws of the State, and they became greatly confused and alarmed; and after their fears were thus aroused, they were told by the officers of the bank that if they would sign certain notes, including the note in suit, they would not prosecute the defendants P. G. Mallory and J. W. Ingram, but on account of professed friendship would say no more about it. Being thus induced, they executed the note, which would not have been done except for the acts and conduct of the officers of the bank above mentioned. The Civil Code, § 3536, declares: "Duress consists in any illegal imprisonment, or legal imprisonment used for an illegal purpose, or threats of bodily or other harm, or other means amounting to or tending to coerce the will of another, and actually inducing him to do an act contrary to his free will." The language "or other means amounting to or tending to coerce the will of another, and actually inducing him to do an act contrary to his free will," is very broad; but under the ruling of *Bond* v. *Kidd,* 122 *Ga.* 812 (50 S. E. 934), it is to be construed in a restricted sense. In that case there was an attempt to plead duress in defense of certain notes. The facts alleged to show duress were: "The plaintiff hired from the defendant a horse and buggy, and made a trip with them into Madison county. Having reached his destination, he hitched the horse to a tree near the house to which he was going. Some time thereafter the horse became frightened at a dog. The plaintiff caught hold of the buggy lines, but the bridle broke and the horse ran down the road for a distance of about two miles and ran into Broad river. The river was several feet above low-water mark, and the horse was drowned and the buggy was carried down the river. Immediately after the accident, the plaintiff informed the defendant of what had taken

place, and before he could return to Hartwell said Kidd went over into Madison county, and approaching your petitioner told him that he was liable to him for the loss of said property; that he, your petitioner, had criminated himself, and that he, Kidd, could have sent another man after your petitioner, but thought he would see him first, and if he, your petitioner, would give him good notes for the value of said property, he would let him off and would not go to law with him, your petitioner. Believing these threats and statements, and not being informed as to his rights in the matter, the plaintiff gave to Kidd three promissory notes, for $50.00 each, indorsed by named parties. The notes were signed by the plaintiff through intimidation and duress, and are without any valuable consideration whatever. Kidd procured the notes by fraud, and fraudulently holds them." But it was held that there were "no facts alleged sufficient to show that the plaintiff gave the notes under circumstances which would amount to duress." There is no law in Georgia which makes it penal merely for an officer of a bank to borrow money from his institution, upon the consent and approval of the directors duly entered on the minutes, either for speculation or any other purpose. The facts alleged could not form the basis of a criminal prosecution of any character, or furnish grounds for the arrest of the officer so borrowing the money, nor could they furnish grounds for aspersions against his character, nor does it appear how it could put him in bad odor with the bonding company. The defendants were men of experience, dealing at arms' length with the officers of the bank, were charged with notice of the law, bound to know that it was no violation of law or other duty for them to borrow money under the circumstances enumerated; and could not ascribe their act in executing the note to a constrained consent or to fraud or duress in a legal sense. It was not alleged that P. G. Mallory had been arrested, or that a warrant had been sworn out against him, or that criminal proceedings of any character had been instituted, or that he was under any personal restraint. But the allegations of the pleas, and of the amendment which was disallowed, present an example of pure threat without any color of power or authority to make it effective. There was no error in striking the plea as amended, nor in disallowing the amendment. On the general subject see *Williams* v. *Stewart,* 115 *Ga.* 864 (42 S. E. 256); *Bond* v. *Kidd,* 1 *Ga. App.* 718 (57 S. E. 944);

Joyce on Defenses to Commercial Paper, § 112; 1 Page on Contracts, § 251; Clark on Contracts, 243. See also Southern Railway Co. v. Mayor & Aldermen of Florence, 141 Ala. 493 (3 Am. & Eng. Ann. Cases, 106, 37 So. 844).

2. The second, third, and fourth headnotes do not require elaboration. *Judgment affirmed. All the Justices concur.*