By the Court.

Benning, J.,
delivering the opinion.
The demurrer to the bill, was for want of equity. The court below sustained the demurrer. Therefore, the the question is, was there equity in the bill ?
1. The deeds were delivered, or they were not delivered.
1. First, if they were not delivered, was there equity in the bill ? We think that there was. The deeds, even if they were not delivered, make a cloud over the true title; and, therefore, the owners of that title, are entitled to have them delivered up to be cancelled. It is true, that there is no special prayer adopted to this aspect of the case; but, there is the general prayer, and it will answer the purposes ; or if it will not, a suitable prayer may be added to the bill by amendment, as matter of right, under the amendment act of 1854.
Secondly; suppose that the déeds were delivered, was there, in that case, equity in the bill ?
In that case the bill becomes a bill to reform the deeds in a particular manner, that it may accomplish what it alleges, was the intention of the maker of them. Is the case made by the bill, one that will authorize a court of equity to require the deeds to be so reformed ?•
The first of the three deeds is as follows : “I, Edward Kennedy, sen., of the county and State aforesaid, for and *458 in consideration of the good will and affection which I have for my illegitimate daughter, Ebaline Sikes, of the age of one year and five or six months old, hath given and. by these presents doth give and bequath to her, the said Ebaline Sikes, a certain negro woman named Ann, and her child Lydia, and all her increase. I give and bequeath the aforesaid slave to the said Ebaline Sikes, and any other child or children which I may hereafter have by my wife Charlotte Kennedy; and I do further give unto the said Ebaline Sikes one bed and furniture to herself alone, to the only proper use and benefit of them the said Ebaline Sikes and the other heirs which I may hereafter have by my present wife, Charlotte Kennedy,” &c.
The part of this deed which the bill alleges to be defective and to need amendment is the part which relates to aft<p-born children.
The other two of the deeds contain similar provisions, as to after-born children.
The amendment which the bill alleges to be needed, is the addition to the deeds of a trustee for the after-born children, to hold the title for them, until their birth.
The grounds for reforming or amending the deeds in this way, are thus stated in the bill:
“That the said Edward Kennedy, at the time he executed said conveyance, was a man unlearned and unable to write — that he employed men unlearned, and who had litle knowledge of law to draw up said conveyance ; that he intended to retain possession of said property and deeds until his death and did retain possession of the same until his death — the property remaining in his possession and the deed found among his papers at his death, and that said conveyances were never delivered. That he failed by reason of the ignorance of himself and the party who drew up said deeds to appoint a trustee to protect this property for the after-born children mentioned *459 in said deeds, who were born and named as heretofore mentioned. That it was the intention of said Edward to provide for said after-born children, as well as the said bastard, Ebaline, by said deeds of conveyance. And to countenance such their unjust conduct, they make various pretences, all of which your orator charges to be untrue, and expressly charges that the said Edward by said conveyances, did intend to convey said property to his after-born children as well as to said bastard Ebaline, and was only prevented from so doing by the ignorance of law, of himself and the party who drew the conveyances.”
Are the grounds thus stated in the bill sufficient to, authorize equity to require the deeds to be so reformed ?
According to these statements in the bill, the author of the deeds intended by them to' convey the property to his “after-born children,” “as well as” to his born child or children; and he “was only prevented from so doing by the ignorance of law, of himself and the party who drew up the conveyances;” “he failed, by reason of the ignorance of himself, and the pai'ty who drew up said deeds, to appoint a trustee to protect this property for after-born children.” And, so far as these statements relate to the intention of the donor, they are true, beyond the possibility of question, for they are supported by the deeds themselves. It is perfectly clear, from the face of the deeds, that the intention of the donor was by deed to convey the property as well to his children to be born, as to his children born. In this respect the case has greatly the advantage over most eases for reforming written contracts. In most of those cases, the object is, to set up an intention different from that found on the face of the written contract. In this case, the intention found on the face of the deeds, (the contents,) is an intention, by those very deeds themselves, to convey property, as well to children to be born as to children born; and the *460 object of the bill is, to make the deeds such, that they shall carry out this very intention. Such, in a word, that they shall be able to accomplish their own clearly expressed wishes. This case, then, is free from the danger attending most eases of the sort; namely, that a court in undertaking to reform the contract, will substitute some contract of its own making for the contract of the parties making.
Why then should any change be made in the deeds ? If they clearly express the donor’s intention, in what can they be deficient ? Children to be born are, of course, not born — are persons not in existence ; and it is said that there is a general principle of law, that a conveyance to a person not in existence, is void, unless made to a trustee for that person, to hold the property till he comes into existence. Hence, the bill concedes the deeds to be defective in the want of a trustee for the after-born children ; and consequently, it jmays that one may be added to the deeds. Now the interposition of a trustee in such a case, is obviously, a matter of the merest technical form; therefore, ignorance that the law requiring such a trustee, ought to be a sufficient ground to justify equity in supplying one, if ignorance of the law is sufficient to justify the interposition of equity in any case. And ignorance of the law is a sufficient ground to justify the interposition of equity in some cases. The case of Wyche and wife vs. Green, (16 Ga. 47,) is one. In that case, the bill stated, “ that by a mistake of the said Batt Wyche, in the use of words not proper and technical for the conveyance of such meaning,” (the one sought to be substituted,) “ the said iutentions of the said Batt Wyche, failed to be equally” [fully] “expressed therein.” — Id. 53. This is but saying that Wyche, from not knowing what were the proper and technical words necessary, failed to use them. And this court held the case to be one for the aid of equity. That is a far stronger case than this.
*461 2. We think, then, that this is a ease in which a court of equity would be authorized to require the deeds to be reformed, by the interposition of a trustee for the after-born children, to take the property intended for them until their birth. And, therefore, we think that there was equity in the bill, in this, its second aspect.
It is to be borne in mind, however, that this is a case in which counsel on both sides agree that a trustee is necessary to the deeds in order to make them sufficient to effectuate the donors intentions as to the after-born children. This being so, this court is not bouud to look into the question, whether the counsel are right in this particular or not; but it may, so far as the present case is concerned, act on the assumption that they are right, and that a trustee is necessary to the deeds in order to make them sufficient to convey an interest to the after-born children.
I must, however, say for myself, that ‘ in my opinion, the deeds are quite sufficient as they stand, to effectuate the whole intention of the testator; and therefore, that, in my opinion, a trustee was not necessary.
Take the first deed. That is a deed in which the words of gift are, “I give and bequeath the aforesaid slaves to the said Ebaline Sikes, and any other child or children which, I may hereafter have by my wife Charlotte.” Here the intention plainly was, that his child, Ebaline,. should have tho whole interest, provided he did not have other children born to him ; but if he did, then that such children should share in the interest equally with Ebaline. This being the intention, the words he used may be taken as equivalent to these words: “I give the whole interest in said slave to my child Ebaline, on condition, nevertheless, that if I should hereafter have other children, a part of that interest shall pass from her to-them; viz: such apart that the effect shall bo, to make her and them take each an equal interest in the slaves.” And here we have but *462 the common case of an estate on condition — the case of the whole interest conveyed to one subject to be divested in whole or in part on the happening of a subsequent event. The whole interest is conveyed to the child Ebaline, subject to be divested from her, as to a part, on the -birth of another child, and vested, as to that part, in that child; and the whole interest is, then, to be in the two children, subject to he divested from them, as to a part, on the birth of a third child, and vested as to that part in that- child; and so on, as often as a new child may be born.
Now such a conveyance as this, is, I think, not only valid, but of not uncommon occurrence. The law permits an estate of any quantity of interest, even the greatest, to be conveyed on condition; as “ an estate to a man and his heirs, tenants of the manor of Dale,” which “is an estate on condition that he and his heirs continue tenants of that, manor;” an estate in fee simple on condition that rent be paid. — 2 Black. Com. 154; see too, Comyn. Dig. “Estate in fee simple,” (A. C.) and note d, where a number of cases are collected.
In my opinion, then, these'deeds are quite sufficient as they are, and need no mending; still, for the reason aforesaid, viz, that the counsel on both sides take a different view, I acquiesce in the conclusion above announced, so far as this case is concerned.
Judgment reversed.