### A08A1474. WEATHERLY v. WEATHERLY et al.
(665 SE2d 922)

ELLINGTON, Judge.

Following Susan Weatherly's death, her daughter, Jennifer Weatherly, filed a proof of claim with Reliance Standard Life Insurance Company, seeking 100 percent of the proceeds of her mother's life insurance policy; Susan's two sons, John and Sam Weatherly, each filed claims seeking one-third of the proceeds. Jennifer then filed this action in the Superior Court of Chatham County against John, Sam, and Reliance, seeking, inter alia, a determination that she is the sole primary beneficiary of Susan's life insurance policy and, therefore, entitled to 100 percent of the proceeds. John filed a motion for summary judgment.[1] The trial court determined that John, Sam, and Jennifer were each entitled to one-third of the life insurance proceeds and, therefore, granted the motion as to that claim. Jennifer appeals, contending the trial court erred in excluding certain evidence and in concluding that she had adduced no evidence in support of a material allegation of her claim to the proceeds of the life insurance policy. For the reasons that follow, we reverse.

"In order to prevail on a motion for summary judgment under OCGA § 9-11-56, the moving party must show that there exists no genuine issue of material fact, and that the undisputed facts, viewed in the light most favorable to the nonmoving party, demand judgment as a matter of law." (Citation omitted.) *Benton v. Benton*, 280 Ga. 468, 470 (629 SE2d 204) (2006).

> If there is no evidence sufficient to create a genuine issue as to any essential element of plaintiff's claim, that claim tumbles like a house of cards. All of the other disputes of fact are rendered immaterial. Further, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in

---

[1] We note that the record shows that Sam has not been served with a summons and complaint. Furthermore, after Reliance paid the contested amount, representing two-thirds of the total proceeds of the insurance policy, into the registry of the court, the trial court dismissed Reliance as a defendant.

the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue.

(Citations and punctuation omitted.) *Sudduth v. Young*, 260 Ga. App. 56, 57 (1) (579 SE2d 7) (2003).

[O]n appeal from the denial or grant of summary judgment the appellate court is to conduct a de novo review of the evidence to determine whether there exists a genuine issue of material fact, and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.

(Citations omitted.) *Benton v. Benton*, 280 Ga. at 470.

Viewed in the light most favorable to Jennifer, the record shows the following undisputed facts. In 2000, Susan designated Jennifer the beneficiary of a life insurance policy issued by Reliance that Susan obtained through her employment. In 2002, Susan bought a house, where she and Jennifer lived together. In 2003, Susan submitted a beneficiary designation form that added Susan's sons, John and Sam, as contingent beneficiaries of her life insurance policy; like the 2000 designation, the 2003 designation named Jennifer as the sole primary beneficiary.

After a long struggle with cancer, Susan died intestate on June 11, 2005. Reliance received a beneficiary designation form, purportedly signed by Susan on May 4, 2005, that made her three children equal beneficiaries of her life insurance policy.[2] In addition, on May 9, 2005, John recorded a quitclaim deed signed on May 5, 2005, that conveyed Susan's house to him. It is undisputed that, absent the quitclaim deed, each of Susan's three children would have inherited an equal interest in their mother's house. According to John, his mother intended that, after her death, he sell the house, pay certain expenses, and divide the net proceeds equally with his siblings.

---

[2] The parties dispute the date Reliance received the designation purportedly signed on May 4, 2005. In its answer, Reliance admitted receiving the designation, but did not specify when. The policy provided, however, "The beneficiary will be as named in writing by the insured to receive benefits at the insured's death. This beneficiary designation must be on file with us or the Plan Administrator [Susan's employer] and will be effective on the date the insured signs it." According to John, he delivered the beneficiary designation to Susan's employer within days of May 4, 2005, approximately one month before she died. While Jennifer alleged in her complaint that John sent the designation purportedly signed on May 4, 2005 to Reliance six days *after* Susan died, she later conceded that John submitted the form to Susan's employer earlier. Thus, for purposes of summary judgment only, it is undisputed that the May 4, 2005 designation was on file with Susan's employer when she died.

Following Susan's death, Jennifer filed a proof of claim, seeking 100 percent of the proceeds of her mother's life insurance policy under the 2003 beneficiary designation. John and Sam each filed claims seeking one-third of the proceeds under the May 4, 2005 designation. Because Jennifer was entitled to at least one-third of the proceeds, regardless of whether the May 4, 2005 designation was valid, Reliance disbursed that portion of the proceeds to her. In her complaint, Jennifer claimed that the May 4, 2005 beneficiary designation "was legally ineffective." In opposing John's motion for summary judgment, she averred in addition that either Susan "did not actually sign the beneficiary designation herself" or "she signed it without knowing its full content and import." Rather, she averred, John "took it upon himself to obtain" the beneficiary designation form, filled it out "to his liking," and submitted it to Susan's employer, all without Susan's knowledge.

In opposing the summary judgment motion, Jennifer submitted the affidavits of Martha Beasley and her brother, Hugh Strickland, who visited Susan in the hospital on May 30, 2005, about three weeks after John claims that Susan signed the quitclaim deed and beneficiary designation form and less than two weeks before her death. Beasley deposed that she had been longtime friends with Susan, their relationship having spanned from approximately 1986 until Susan's death in June 2005. Generally, she deposed that she and Susan had many conversations in which Susan indicated that she had made Jennifer the sole beneficiary of her life insurance policy because she wanted to provide for Jennifer in the event of her death. Beasley deposed that, during the May 30, 2005 visit, Susan asked her

> to promise her to help Jennifer get the insurance money to pay off the house mortgage and to go back to school. . . . This was all consistent with what Susan had said to me during the previous years. She was concerned that Jennifer needed to go back to school [so she could make a good income]. She was concerned that Jennifer have a place to live, and she wanted Jennifer to own the house. . . . At no time during our conversation on that date did Susan indicate to me in any way that she had deeded the house to her son, John, or changed her insurance policy beneficiaries.

In his affidavit, Beasley's brother, Strickland, also reported hearing Susan say on May 30, 2005, that she wanted Beasley to help Jennifer get the insurance money to pay off the mortgage and go back to school.

On the issue of the life insurance proceeds, the trial court determined that the May 4, 2005 beneficiary designation form was

unambiguous. As a result, the trial court ruled, it would not consider any parol evidence to add to, take from, or vary the terms of the document. "[L]ooking at the four corners of the instrument," the trial court determined that the beneficiary designation was valid and, therefore, that Jennifer was entitled only to the one-third of the life insurance proceeds that she had already received. Accordingly, the trial court granted John's motion for summary judgment on the issue of the life insurance proceeds.[3]

1. Jennifer contends that the trial court erred in ruling that, because the May 4, 2005 beneficiary designation form was unambiguous, parol evidence was not admissible to determine whether the form was legally effective in changing the beneficiaries of the policy.

Under Georgia law, "[p]arol contemporaneous evidence is generally inadmissible to contradict or vary the terms of a valid written instrument." OCGA § 24-6-1. Although we agree with the trial court's determination that the May 4, 2005 beneficiary designation was unambiguous and, therefore, that the affidavits were not admissible on this basis,[4] our inquiry does not end there, because parol evidence may be admissible for purposes other than explaining the parties' agreement where the instrument memorializing the agreement is ambiguous.[5] In particular, "[p]arol evidence shall be admissible to show that a writing either was originally void or subsequently became so." OCGA § 24-6-8. See *Hinson v. Hinson*, 221 Ga. 291, 294 (2) (144 SE2d 381) (1965) (because the plaintiff was not attempting to contradict the terms of a document cancelling a promissory note and deed to secure debt, but to show that the instrument was void because of fraud, the parol evidence rule did not apply). In this case, Jennifer does not seek to explain an alleged ambiguity in the May 4, 2005 beneficiary designation but, rather, to show that Susan did not sign the beneficiary designation with

---

[3] In her complaint, in addition to seeking a determination that she is entitled to 100 percent of the life insurance proceeds, Jennifer also sought to set aside the 2005 quitclaim deed and asserted claims for conversion and punitive damages. The trial court denied John's motion for summary judgment on the issue of the deed. Jennifer's claims for conversion and punitive damages were not the subject of John's motion for summary judgment or the trial court's order.

[4] "Where the terms of a written contract are clear and unambiguous, the court will look to the contract alone to find the intention of the parties. Such a contract is the only evidence of what the parties intended and understood by it. Parol evidence is not admissible to contradict or construe an unambiguous contract." (Citation, punctuation and footnote omitted.) *Speed v. Muhanna*, 274 Ga. App. 899, 905 (2) (b) (619 SE2d 324) (2005).

[5] See John K. Larkins, Jr., Georgia Contracts: Law and Litigation, § 9-8 (2007) (the parol evidence rule is "actually an intricate body of rules codified in ten separate sections of the Evidence title of the Code and in one section of the Contracts title") (punctuation and footnote omitted). See also OCGA §§ 13-2-2 (1); 24-6-1 through 24-6-10.

knowledge of its effect and, therefore, it is not a valid written instrument.

John counters that the affidavits were not admissible under this rationale because Jennifer failed to allege with particularity that the May 4, 2005 beneficiary designation was void due to fraud. See OCGA § 9-11-9 (b) ("In all averments of fraud or mistake, the circumstance constituting fraud or mistake shall be stated with particularity."). It is true that, when a plaintiff asserts a claim in tort for fraud, the plaintiff's failure to state with particularity the circumstances allegedly constituting fraud is a sound basis for the defendant to move for a more definite statement under OCGA § 9-11-12 (e).[6] This does not mean, however, that OCGA § 24-6-8, which allows parol evidence to show that a writing is void, applies only where the plaintiff avers fraud with particularity in her complaint. Because Jennifer does not seek to contradict or vary the terms of a valid written instrument, but, rather, to show that a written instrument (the May 4, 2005 beneficiary designation) was void, the trial court erred in excluding all parol evidence from consideration in ruling on John's motion for summary judgment. *Hinson v. Hinson*, 221 Ga. at 294 (2).

2. Jennifer contends that material questions of fact exist regarding the validity of the May 4, 2005 beneficiary designation and, therefore, that the trial court erred in granting John's motion for summary judgment on the issue of the insurance proceeds. Specifically, she argues that she has identified circumstantial evidence that, because of John's fraud, Susan did not sign the beneficiary designation or, if she did sign it, she was unaware of what she was doing.

We are mindful that,

> [g]iven that fraud is inherently subtle, slight circumstances of fraud may be sufficient to establish a proper case. Proof of fraud is seldom ever susceptible of direct proof, thus recourse to circumstantial evidence usually is required. Moreover, it is peculiarly the province of the jury to pass on these circumstances showing fraud.

(Citations and punctuation omitted.) *Almond v. McCranie*, 283 Ga. App. 887, 889 (2) (643 SE2d 535) (2007). Having carefully reviewed the record, we conclude that, if the affidavits of Martha Beasley and Hugh Strickland are considered, there is some evidence that as of May 30, 2005, Susan had not changed her mind about leaving 100 percent of the insurance proceeds to Jennifer. The jury could infer

---

[6] See generally Richard C. Ruskell, Davis and Shulman's Ga. Practice and Procedure, § 7:13 (2008 ed.).

from this that, as Jennifer contends, Susan did not sign the May 4, 2005 beneficiary designation with knowledge of its effect. It follows that there is some circumstantial evidence that the instrument arose from a fraud or forgery and was, therefore, void. See *Lewis v. C & S Nat. Bank*, 139 Ga. App. 855, 861-862 (1) (c) (229 SE2d 765) (1976). Because we have reversed the trial court's judgment excluding consideration of those affidavits, see Division 1, supra, we reverse the judgment in favor of John.

*Judgment reversed. Blackburn, P. J., and Miller, J., concur.*

DECIDED JULY 23, 2008.

Gannam & Gnann, J. Hamrick Gnann, Jr., for appellant.
Weiner, Shearouse, Weitz, Greenberg & Shawe, Malcolm Mackenzie III, Anthony R. Casella, for appellees.